IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:15-cr-173 (RDA) |
| | ) | |
| MONCLAIRE SAINT LOUIS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Monclaire Saint Louis's ("Defendant")

*pro se* Motion for Reduction in Sentence pursuant to 18 U.S.C. § 3582(c) and Amendment 821 to

the U.S. Sentencing Guidelines ("Motion"). Dkt. 231.[1] Having considered Defendant's Motion

together with the Government's Response (Dkt. 232), the Court DENIES the Motion for the

reasons that follow.

### I. BACKGROUND[2]

#### A. Factual Background

In Haiti, Defendant and his codefendants, Samson Jolibois and Ulriste Tulin, kidnapped

and held for ransom two U.S. citizens, Yvroseline Ferile and Ariante Mercelin. Dkt. 210 ¶¶ 24,

25. Defendant and his codefendants were members of a kidnapping gang that targeted citizens of

---

[1] Although Defendant's Motion suggests that he has two bases for relief, Defendant relies on Section 3582 only to the extent that it provides a basis to account for the amendments to the Sentencing Guidelines and does not rely on Section 3582 as a separate basis for relief.

[2] The facts here are appropriately drawn from the Trial Transcript ("Transcript") and the Presentence Investigation Report (the "PSR") adopted by former U.S. District Judge Liam O'Grady at Defendant's re-sentencing. Dkts. 89-91, 210, 220.

1

the United States and European countries for the purposes of receiving ransom payments. *Id.* ¶ 20.

On June 2, 2012, Yvroseline Fergile, a U.S. citizen of Haitian descent, was kidnapped when she was held at gun point, "grabbed by her hair . . . [and] forced into a minibus." *Id.* ¶ 33. "She was hit from time to time in order to stop her from screaming, as they drove to the location where [she] was going to be held." *Id.* The kidnappers repeatedly threatened Fergile that they would rape, shoot, and kill her. *Id.* ¶¶ 33, 34; Dkt. 90 at 96:10-16 (noting that one of the kidnappers threatened to "cut [her] finger, cut [her] face, cut [her] body [into] pieces and start sending [them] to [her family] if they [didn't] get [the] money."). Further, codefendant Jolibois testified that everyone, including Defendant, knew that guns would be involved in the kidnapping because "it is an act that you commit using guns." Dkt. 90 at 322:25-323:2. Upon arriving to the secondary location, "[Fergile] was bleeding from her arm and nose, and a blood vessel had burst in her eye." Dkt. 210 ¶ 33. Her hands and legs were restrained, and a gun was again placed to her head. *Id.* ¶ 33. Fergile identified Defendant as the driver of the minibus and as being present at the house where she was held hostage. *Id.* ¶ 36. During her captivity, the leader of the kidnappers again threatened to have each of the kidnappers rape her, though none ultimately did. *Id.* The kidnappers negotiated with her family and demanded $150,000 for her release. *Id.* ¶ 24. On June 8, 2012, Fergile escaped from the kidnappers' custody. *Id.*

On July 9, 2012, Defendant participated in the kidnapping of Ariante Mercelin, another U.S. citizen of Haitian descent, who was grabbed outside of her home by a "man holding a gun." *Id.* ¶ 30. The man told Mercelin, "if you scream, I'm going to blow your head up." *Id.* The man proceeded to "drag her to a smaller house on the property . . . placed a gun to her face and demanded the money in her home." *Id.* While Mercelin was in captivity, the kidnappers

negotiated with her family and demanded $250,000 for her release. *Id.* ¶ 25. Mercelin feared the kidnappers were going to kill her because they "did not cover their faces and shared details about their lives." *Id.* ¶ 31. On July 12, 2012, law enforcement officers in Haiti rescued Mercelin and apprehended Saint Louis. *Id.* ¶ 25.

### B. Procedural Background

On February 4, 2016, a federal grand jury in this District returned a four-count Superseding Indictment charging Defendant and codefendant Tulin with one count of conspiracy to commit hostage taking (Count 1), two counts of hostage taking (Counts 2 & 3), and one count of using a firearm during a crime of violence (Count 4). Dkt. 6. On December 16, 2016, a jury returned a verdict and found Defendant and his codefendant Tulin guilty on all counts. Dkt. 87. On March 31, 2017, former U.S. District Judge Liam O'Grady sentenced Defendant to 156 months on Counts 1, 2, and 3 to run concurrently to one another, and 84 months as to Count 4, to run consecutively to those counts, for a total term of imprisonment of 240 months. Dkts. 117, 121. Defendant's conviction was affirmed on appeal. Dkt. 146.

In 2020, Judge O'Grady granted Defendant's motion seeking *Davis* relief, vacated Defendant's conviction on Count 4, and ordered Defendant to be resentenced.[3] Dkt. 199. On November 17, 2020, Judge O'Grady re-sentenced Defendant to 204 months on Counts 1, 2, and 3 to run concurrently to one another, with a five-year term of Supervised Release. Dkt. 221. On May 24, 2024, the case was reassigned to this District Judge.

---

[3] In *United States v. Davis*, the Court held the residual clause of 18 U.S.C. § 924(c)(3)(B) to be unconstitutionally vague. 588 U.S. 445 (2019). Here, Defendant's conviction on Count 4 was vacated because hostage taking only qualified as a predicate crime of violence under the residual clause, not the elements clause of 18 U.S.C. § 924(c)(3). Dkt. 199.

3

On August 12, 2024, Defendant filed the instant *pro se* Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c) and Amendment 821 to the U.S. Sentencing Guidelines. Dkt. 231. On August 22, 2024, the Government filed their Response in Opposition to the Motion. Dkt. 232.

## II. LEGAL STANDARD

The legal standard for evaluating a motion for sentence reduction pursuant to Amendment 821 to the Sentencing Guidelines is set by 18 U.S.C. § 3582(c). In relevant part, Amendment 821: (1) reduces "status points" for certain offenders with less serious criminal histories and (2) provides for a decrease of two offense levels for individuals with no criminal history points and whose offense did not involve specific aggravating factors. U.S. Sentencing Comm'n, *Amendment to the Sentencing Guidelines* (August 31, 2023). On August 24, 2023, the Commission voted to give retroactive effect to these provisions of Amendment 821. *Id.*, *see also* U.S. Sentencing Comm'n, *U.S. Sentencing Commission Votes to Allow Retroactive Sentence Reductions and Announces its Next Set of Policy Priorit*es (Aug. 24, 2023), available at https://www.ussc.gov/about/news/press-releases/august-24-2023 (last accessed July 10, 2025). "When the Commission makes a Guidelines amendment retroactive, 18 U.S.C. § 3582(c) authorizes a district court to reduce an otherwise final sentence that is based on the amended provision." *Dillion v. United States*, 560 U.S. 817, 821 (2010).

In deciding if a sentence reduction is appropriate, "[a] court must first determine that a reduction is consistent with [U.S.S.G.] § 1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in [18 U.S.C.] § 3553(a)." *Id.* at 826. U.S.S.G. § 1B1.10(b)(1) requires the court to "determine [if] the amended guideline range . . . would have been applicable to the defendant" at the time of the initial

sentencing. If a court determines that a sentence reduction is available, the court must then consider the Section 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. *See* 18 U.S.C. § 382(c)(1)(A); *Dillion*, 560 U.S. at 827.

### III. ANALYSIS

Defendant moves for a sentence reduction pursuant to Part B of Amendment 821 of the Sentencing Guidelines; however, Defendant is not eligible for a sentence reduction under Part B. Accordingly, the Court will deny Defendant's Motion.

Part B of Amendment 821 of the Sentencing Guidelines, now appearing in Section 4C1.1 of the Sentencing Guidelines, provides that a defendant cannot receive an adjustment if his offense involves any of the specific aggravating factors outlined in Section 4C1.1(a)(2)-(10).[4] U.S.S.G. § 4C1.1. The two relevant factors here are: "(2) the defendant . . . use[d] violence or credible threats of violence in connection with the offense" and "(6) the defendant . . . possesse[d] . . . a

---

[4] Under Section 4C1.1, a Defendant is not eligible for a reduction if:

(1) the defendant did . . . receive an adjustment under §3A1.4 (Terrorism); (2) the defendant . . . used violence or credible threats of violence in connection with the offense; (3) the offense did . . . result in death or serious bodily injury; (4) the instant offense of conviction . . . is a sex offense; (5) the defendant . . . personally caused substantial financial hardship; (6) the defendant . . . possessed, received, purchased, transported, transferred, sold, or otherwise disposed of a firearm or other dangerous weapon (or induced another participant to do so) in connection with the offense; (7) the instant offense of conviction is . . . covered by § 2H1.1 (Offenses Involving Individual Rights); (8) the defendant did . . . receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.1 (Serious Human Rights Offense); (9) the defendant did . . . receive an adjustment under § 3B1.1 (Aggravating Role); or (10) the defendant was . . . engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

U.S.S.G. § 4C1.1(a)(1)-(10).

firearm or other dangerous weapon (or induced another participant to do so) in connection with the offense." *Id.*

Taking the latter first, Defendant is ineligible for a reduction because he "possessed . . . a firearm . . . in connection with the offense." 4C1.1(a)(6). At trial, evidence was presented that the offenses involved the use of guns, and codefendant Jolibois testified that everyone, including Defendant, knew guns would be involved in the kidnapping because it is "an act that you commit using guns." Dkt. 90 at 322:25-323:2. Based on the evidence and testimony presented at trial, the jury necessarily found that Defendant did possess a gun in connection with the offenses when they found Defendant guilty on Count 4.[5] Dkt. 87; *United States v. Davis*, 588 U.S. 445 (2019) (holding the residual clause of 18 U.S.C. § 924(c)(3)(B) unconstitutionally vague). Thus, Defendant is ineligible for a reduction because he "possessed . . . a firearm . . . in connection with the offense." U.S.S.G. § 4C1.1(a)(6).

Defendant is also ineligible for a sentence reduction because he "used violence or credible threats of violence in connection with the offense." U.S.S.G. § 4C1.1(a)(2). In the absence of any definition of "violence" provided by the Sentencing Guidelines, courts have looked to the plain meaning of the term. *United States v. Yang*, 2024 WL 519962, at * 3-4 (D.D.C. Feb. 9, 2024); *United States. v. Boos*, 127 F.3d 1207, 1210 (9th Cir. 1997). "Contemporary dictionaries define 'violence' as '[t]he use of physical force, usu[ally] accompanied by fury, vehemence, or outrage; esp[ecially], physical force unlawfully exercised with the intent to harm, . . . or as 'the use of physical force so as to injure, abuse, damage, or destroy.'" *Id.* (first quoting *Violence, Black's*

---

[5] Although Defendant's conviction on Count 4 has been vacated on legal grounds under *Davis*, there was no argument or finding that would call into question the jury's finding that Defendant possessed a firearm in connection with the offenses. Dkt. 199. Rather, following *Davis*, hostage taking is not a crime of violence, and therefore, it does not qualify as a predicate offense to support a conviction on Count 4. *Id.*

*Law Dictionary* (11th ed. 2019); and then quoting *Violence, Merriam Webster*, https://www.merriam-webster.com/dictionary/violence). In this case, Defendant was a "member[] of the kidnapping crew and . . . actively participated in the kidnappings." Dkt. 210 ¶ 45. These kidnappings involved members of the crew kidnapping their victims at gunpoint; threatening them with rape, shooting, and death; transporting them to a secondary location; and holding them for ransom. *Id.* ¶¶ 17-39. Thus, Defendant "used violence or credible threats of violence in connection with the offense" and is ineligible for a reduction under U.S.S.G. § 4C1.1(a)(2). *See United States v. Sanchez*, 2025 WL 51473, at *1-2 (E.D. Va. Jan. 8, 2025) (holding a defendant who kidnapped a woman at gunpoint was ineligible for a sentence reduction under Part B of Amendment 821 because he used violence and credible threats of violence); *United States v. Lewis*, 2024 WL 1184712, at *1-2 (W.D.N.C. Mar. 19, 2024) (holding a defendant who robbed a Jack in the Box at gunpoint and threatened to shoot the manager was also ineligible for a sentence reduction under Part B of Amendment 821 because he used violence and credible threats of violence).

Therefore, regardless of being a zero-point offender, Defendant cannot qualify for a sentence reduction under Part B of Amendment 821 as he does not meet "all of the . . . criteria" because he "possessed . . . a firearm . . . in connection with the offense" and "used violence or credible threats of violence in connection with the offense." U.S.S.G. §§ 4C1.1(a)(2), (6). Thus, the Court finds Defendant ineligible for a sentence reduction.

Even assuming *arguendo* that Defendant is eligible for a sentence reduction, that does not end the analysis. Even decreasing the offense level by two, Defendant would still face a Guideline sentence of life—far greater than the term of 204 months to which Defendant was re-sentenced in

2020.[6] Moreover, the other Section 3553(a) factors and Defendant's post-conviction conduct do not support a sentence reduction. In his Motion, Defendant focuses on his rehabilitation but does not address the other Section 3553(a) factors. Although Defendant is commended for the steps he has taken to fill his time and improve himself while incarcerated, they do not outweigh the other Section 3553(a) factors. Defendant was convicted of a serious, violent kidnapping conspiracy involving multiple victims. Defendant was already sentenced below the applicable guidelines range, and further reducing Defendant's sentence in the absence of extraordinary and compelling circumstances would risk creating unwarranted sentencing disparities. Finally, although Defendant may be adequately deterred by the sentence that he has served thus far, reducing his sentence based on his alleged rehabilitation alone would not promote respect for the law or achieve general deterrence. Thus, a sentence reduction is not warranted considering the nature and circumstances of the offense, the need to promote respect for the law, the need to provide just punishment for the offense, the need to afford adequate deterrence, the kinds of sentences available and the applicable guidelines range, and the risk of unwarranted sentencing disparities. Accordingly, the Section 3553(a) factors do not support a sentence reduction, and the Motion will also be denied for this reason.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED that Defendant's Motion for Reduction in Sentence (Dkt. 231) is DENIED; and it is

---

[6] Defendant's total offense level was 46 (treated as 43 pursuant to Application Note 2 of USSG Chapter 5, Part A – Sentencing Table). Thus, his new offense level would be 44 (also treated as 43 pursuant to Application Note 2 of USSG Chapter 5, Part A – Sentencing Table).

FURTHER ORDERED that Defendant's Motion to Request Clarification (Dkt. 227), in which Defendant seeks clarification regarding his eligibility for a sentence reduction on the bases analyzed here, is DENIED as MOOT.

If Defendant wishes to appeal this decision, he must file a written Notice of Appeal with the Clerk of this court within fourteen (14) days of receipt of this Order. Failure to file a timely Notice of Appeal waives the right to appeal.

The Clerk is directed to forward copies of this Order to Defendant, counsel of record, the U.S. Marshals Service, the Federal Bureau of Prisons, and the U.S. Probation Office.

It is SO ORDERED.

Alexandria, Virginia
April 17, 2026

/s/

Rossie D. Alston, Jr.
United States District Judge